St. Louis Southwestern Railway Company of Texas v.
J. R. French.

Decided May 10, 1900.

**Carriers—Delay in Transporting Corpse—Evidence Held Sufficient.**

In an action of damages against appellant railway company for delay in transporting a corpse, evidence showing that appellant's agent gave to a transfer agent, who brought the corpse to its depot from that of a connecting line, a receipt which showed its destination to be a point on appellant's road, and that it was seen on a baggage truck near the door of the express car before the train left, and that after the train had departed appellant's station agent wired the conductor that

the corpse had been left, and would be forwarded on the next train, was sufficient to establish that appellant was informed as to the destination of the corpse, and to warrant a verdict against it for negligent delay.

APPEAL from the County Court of Smith. Tried below before Hon. GEORGE W. CROSS.

*Sam H. West* and *Marsh, McIlwaine & Fitzgerald,* for appellant.

*F. J. McCord* and *S. A. Lindsey,* for appellee.

### ON MOTION FOR REHEARING.

PLEASANTS, ASSOCIATE JUSTICE.—In affirming this case on a former day of this term we filed no written opinion, and do not now consider the questions involved in this appeal of sufficient importance to require any detailed consideration; but counsel for appellant in their motion for rehearing so earnestly insist that this court must have been misled by the statements in the appellee's brief as to the facts disclosed by the record, that in deference to them we will state the facts which appear from the record and which controlled us in the disposition of the case.

Appellee brought this suit to recover damages for mental distress, pain, and anguish caused him and his wife by the alleged negligence of appellant in delaying the shipment of the corpse of their child from the city of Tyler to the town of Pittsburg. Appellee and his wife live at Palestine, Texas, at which place their child died on the 11th day of August, 1899, and being desirous of burying the child at Pittsburg, he purchased tickets from the agent of the International & Great Northern Railway Company at Palestine for the transportation of himself and wife and the body of his child over said railway to Tyler and over the appellant railway from Tyler to Pittsburg. These were all through tickets from Palestine to Pittsburg, and contained a transfer coupon entitling appellee and his wife to transportation from the International & Great Northern depot at Tyler to appellant's depot at said place, but the transfer coupon attached to the corpse ticket was marked out, and appellee was informed when he bought said ticket that he would have to attend to the transfer of the corpse at Tyler. Appellee with his wife and the corpse of his child arrived at Tyler at 11:50 a. m. on the 12th of August, and appellant's passenger train going to Pittsburg passed through Tyler about 1:30 p. m. of that day. Upon arrival at Tyler appellee employed a transfer man to take the corpse of his child to appellant's depot at that place. Appellee did not go with the corpse from one depot to the other, but upon his arrival at appellant's depot a short time before the departure of the train for Pittsburg, he saw the corpse on a baggage truck near the door of the express car of appellant's train. The transfer man delivered to appellee the receipt for the corpse which had been given him by appellant's baggagemaster when the corpse

was delivered at the depot. Appellee, supposing that the corpse would be placed on the train, boarded same with his wife, without exhibiting the corpse ticket or notifying any agent of appellant that he desired the corpse shipped on that train.

Some time after the train left Tyler appellee was informed that the corpse of his child had been left at the depot at Tyler. After appellee's train had left Tyler the appellant, upon discovering that the corpse had been left, made up a special train and took the corpse to Pittsburg, arriving there about one hour and forty-five minutes after the arrival of the train bearing appellee and wife. The burial of the child was delayed, and appellee and his wife were greatly distressed in mind when they learned that the corpse had been left in Tyler, and suffered great anguish and suspense until its arrival at Pittsburg. Upon these facts the jury returned a verdict in appellee's favor for $300. It is strenuously insisted by counsel for appellant that the verdict can not be sustained because the damage, if any, was occasioned by the negligence of appellee in failing to notify any of appellant's agents at Tyler that he intended to take the train for Pittsburg, and desired the corpse to go on the train with him; and on this point it is contended that the evidence in the record does not show that appellant had any information as to the destination of the corpse, and therefore could not be held guilty of negligence in not forwarding same to Pittsburg.

We do not think this contention is supported by the record. The receipt for the corpse given the transfer agent at Tyler by appellant's agent at that place is as follows:

"International & Great Northern Railroad Company.

"Through and local baggage transfer receipt. For baggage, important and registered mail, delivered to C. B. Railway.

| "From train No. 8, at station 19. | | 8th-12th-1899. |
| "Kind of checks. | Destination. | Number of checks. |
| "I. & G. N. Strap. | Pittsburg. | 2461. |
| "1 Corpse. | ——— | J. R. French, in charge. |

"Enter important and registered letters and company's supplies on back of this receipt.

"I hereby acknowledge receipt of —— pieces of baggage in good order, bearing checks described and numbered as above, also the important and registered mail, and company's supplies entered on back of this receipt.

"R. T. Bradford-R,

"Train Baggageman Mineola and Troupe Route.

"C. E. Wood,

"Station Baggageman I. & G. N. Ry.

"L. A. Henry,

"Local Agent Cotton Belt."

On back of this instrument is the following:

"International & Great Northern Railroad Company.

"Through and Local baggage transfer receipt.

"Delivered to C. B. Railway Company from train No. 8, at Station 19.

"8-12-1899.   R. T. Bradford-R., Mineola and Troupe route."

While it is not clear from this receipt that the I. & G. N. strap mentioned therein and showing the destination "Pittsburg" and the number "2461" was attached to the box containing the corpse, when considered in connection with other testimony in the case, we think the receipt may be so understood.   The transfer agent testified that he took no other baggage from the International & Great Northern depot when he took the corpse over to appellant's depot.   The tickets sold appellee for himself and wife were through tickets from Palestine to Pittsburg, and while the appellee had a trunk, the evidence nowhere intimates that he had same transferred with the corpse, and the fact is that he had nothing to do with the transfer of the trunk, as his tickets called for a transfer by the railway company, except as to the corpse.   Such being the facts, the receipt given the transfer agent who transferred the corpse for appellee would not have contained a receipt for baggage not delivered by him to appellant, and the strap mentioned in the receipt must have been attached to the box containing the corpse.

Another circumstance which tends to establish this conclusion is, that shortly after the train on which appellee went to Pittsburg left Tyler, the conductor on said train was notified by wire by appellant's agent at Tyler that a corpse for Pittsburg had been left at Tyler and would be forwarded to Pittsburg on the next train.   This telegram shows that the agents of appellant at Tyler knew the destination of the corpse shortly after appellee's train left Tyler, and in the absence of any testimony as to how this information was obtained, and appellee having testified that he spoke to no one in Tyler about taking the corpse to Pittsburg, it may reasonably be inferred that an inspection of the coffin disclosed its destination.   None of the agents of appellant at Tyler testified to any want of knowledge on their part as to the destination of said corpse, and there is no testimony in the record contradicting or tending to controvert the facts before stated.   Upon these facts we are of opinion that negligence on the part of appellant's agents is clearly established, and the jury could have arrived at no other reasonable conclusion.   Such being our conclusion as to the facts in the case, the matters complained of by appellant, if errors, were harmless, and the motion for rehearing is therefore overruled.

*Overruled.*