**LANCASTER et al. v. MEBANE.    (No. 2684.)**

(Court of Civil Appeals of Texas. Texarkana.
Feb. 2, 1923. Rehearing Denied
Feb. 8, 1923.)

1. **Damages ⊂⟹23 — Right of recovery for
breached contract limited to injuries that de-
fendant could reasonably contemplate would
result.**

The right of recovery for a breach of a con-
tract is limited to such injuries as defendant,
at the time he entered into the contract, rea-
sonably should have contemplated would prob-
ably result from his breach thereof.

2. **Carriers ⊂⟹104—Evidence held to show
facts known to agent, charging carrier with
notice that corpse was that of plaintiff's wife
and with contemplation of his mental suffer-
ing if carriage delayed.**

Evidence that plaintiff's son made arrange-
ments with the carrier's ticket agent to ship
corpse over a certain route, paid for its trans-
portation, and bought tickets for four persons
to accompany it, shows facts sufficient to put
the agent on inquiry as to the identity of the
persons who were to use the tickets and as to
their relationship to deceased, so that the car-
rier was charged with notice that the corpse
was that of plaintiff's deceased wife, and of the
fact that one of the tickets was for use by him,
and should be held to have contemplated that
he would undergo mental suffering if the con-
tract was breached.

3. **Appeal and error ⊂⟹1004(3)—Judgment for
$1,250 in accordance with remittitur for de-
lay in transportation of corpse not to be in-
terfered with on appeal as excessive.**

A judgment for $1,250 in accordance with a
remittitur, instead of $1,500, found by the jury
for delay in the transportation of the corpse of
plaintiff's deceased wife, resulting in the post-
ponement of funeral arrangements, will not be
interfered with on appeal as excessive.

Appeal from District Court, Bowie County;
Hugh Carney, Judge.

Suit by J. A. Mebane against J. L. Lan-
caster and another, receivers. From judg-
ment for plaintiff, defendants appeal. Af-
firmed.

This was a suit by appellee against appel-
lants for damages he claimed he suffered be-
cause of the breach by them of a contract
they entered into to transport the corpse of his
deceased wife from El Paso to DeKalb, by
way of Texarkana, and on trains specified,
which resulted in a delay of about eight
hours in the arrival of said corpse at De-
Kalb.

It appeared from the testimony that ap-
pellee and his wife and children resided at
DeKalb during many years before 1921, when
they moved to El Paso for the benefit of her
health. She died in El Paso April 25, 1921.
Appellee determined to have her remains
buried at DeKalb, and at once after her
death his son telegraphed persons there to

arrange accordingly. The son, appellee, and
his two daughters were to accompany the
corpse to DeKalb. The son went to appel-
lants' ticket office in El Paso and talked with
appellants' agent about the way to go.

"We talked," the son testified, "about trains
leaving El Paso, and when I could get home,
and we decided the quickest way was to come
by Texarkana on the Sunshine Special and catch
the early train out of Texarkana, and that
would put us in home at 9:45. I think at that
time the Sunshine Special left El Paso at 4:15.
My mother died on the 25th day of April. Q.
Now, if you got transportation and left El
Paso at 4:15 the 25th, what time would you
have gotten into DeKalb via Texarkana with
all connections having been made? A. 9:45
on the morning of the 27th. As to my discuss-
ing with the agent any other route except that
one, he said something about the Fort Worth
train, and we discussed that, but it would
throw us a few hours late. Had we taken the
4:15 Sunshine Special at El Paso April 25th
and changed at Fort Worth to the Trans-Con-
tinental Division of the Texas & Pacific, we
would have gotten to DeKalb April 27th about
5:25 or 5:30. I forget exactly. I objected to
that route and told him I wanted to be routed
the other way, and gave him to understand
why; and he wrote the tickets that way (by
the way of Texarkana), because that would
throw us nearly a day late. I bought the trans-
portation for my deceased mother, myself, my
father, and my two sisters; two sisters to Tex-
arkana and one sister to Fort Worth, and she
went home to Tulsa from Fort Worth. All of
the tickets for DeKalb were marked 'via Tex-
arkana.' * * * I told him (the agent) I
wanted a corpse ticket and four other tickets,
and one to Fort Worth."

Appellee and his son and daughters left
El Paso with the corpse at 4:15 p. m. April
25th, on the Sunshine Special, and reached
Fort Worth about 3 p. m. April 26th, where,
without their knowledge, the corpse was
taken from the train and held for transpor-
tation to DeKalb over the Trans-Contin-
ental Division of the Texas & Pacific Rail-
way. Appellee testified he did not learn
until the Sunshine Special reached Big Sandy
that the corpse had been left at Fort Worth,
and the son testified that the train reached
Mt. Pleasant (having been detoured over
tracks of the St. Louis Southwestern Rail-
way) before he knew thereof. The Sunshine
Special was due at Texarkana at about 10
p. m. April 26th, but was late and did not
reach there until about 2 a. m. April 27th.
The train the corpse was to have been trans-
ported on from Texarkana to DeKalb by the
terms of the contract left Texarkana at 8
a. m. April 27th, and arrived at DeKalb at
9:45 the same day. Appellee's son testified
that his wife, with his car, met him in Tex-
arkana, and the inference is that he went
from Texarkana to DeKalb in his car instead
of on the train last referred to above.
Whether appellee and his daughters also

⊂⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

went by automobile from Texarkana to De-Kalb, or on said train, does not appear in the record. The corpse reached DeKalb over said Trans-Continental Division at about 5:50 p. m. April 27th. A consequence of the violation by appellants of their contract was to delay the funeral services from about 9:45 a. m. to about 5:50 p. m. of April 27th. The only issue the court submitted to the jury was one as to the amount appellee was entitled to recover as compensation for the mental anguish he endured as a result of appellants' breach of the contract. The jury found the amount to be $1,500. Thereupon, on their finding and others made by himself, the court rendered judgment in appellee's favor for said sum. At the hearing on appellants' motion for a new trial the court concluded the judgment was $250 in excess of what it should be for, and so advised the parties. Thereupon appellee filed a remittitur of $250 of the amount, and the court so modified the judgment as to award appellee a recovery of $1,250 instead of $1,500. It does not appear in the record that appellants requested the trial court to submit any other issue to the jury than the one he did submit to them.

King, Mahaffey & Wheeler, of Texarkana, for appellants.

Sid Crumpton, of Texarkana, and O. B. Pirkey, of New Boston, for appellee.

WILLSON, C. J. (after stating the facts as above). Appellants excepted to the trial court's charge to the jury, on the ground that its effect was to instruct them to find in appellee's favor; and requested the court to instruct the jury, instead, to find in their favor. The action of the court in overruling the exception and in instructing the jury as he did, and in refusing to instruct them as he was requested to, presents the main question on the appeal.

[1, 2] The contention is that it did not appear that appellants had notice of the interest of appellee in the performance of the contract, and that they therefore were not liable to him for injury he suffered because they breached it. The validity of the contention must, of course, be determined with reference to the rule applicable in all suits for damages based upon the breach of a contract, which limits the right of a plaintiff to a recovery for only such injuries as the defendant at the time he entered into the contract reasonably should have contemplated would probably result from his breach thereof.

Appellants insist that the damages awarded appellee were not such as they reasonably should have contemplated he would suffer, and therefore that the judgment was unauthorized. The insistence is based on testimony showing that the tickets were purchased by appellee's son, and the absence, they assert, of testimony showing that at the time

he purchased same appellants had notice that he was acting for appellee, or notice of the relationship existing between him and the purchaser, or between him and the deceased, or even of his existence. Appellee, on the other hand, insists it sufficiently appeared from the testimony that appellants had notice of such relationship.

In support of their view of the testimony, appellants invoke the rule settled in this state as applicable in suits against telegraph companies for damages for mental suffering, that such companies "cannot," quoting from the opinion of the court in Tel. Co. v. Taylor (Tex. Civ. App.) 162 S. W. 999, "be held liable for damages resulting from mental suffering on the part of any person who is not referred to in, or whose name is not connected with, the message, unless the telegraph company has notice from some other source that such other person is interested in the prompt delivery of the message," and cited Express Co. v. Fuller, 4 Tex. Civ. App. 213, 23 S. W. 412, and Nichols v. Eddy (Tex. Civ. App.) 24 S. W. 316, as illustrating the application of the rule in cases like this one. The contract in the Fuller Case for the carriage of the corpse of Dixie Fuller was made in the name of his father, the plaintiff, to whom the corpse was consigned. The recovery, in part, seems to have been for mental suffering of the mother, who was not named in the contract, and whose relationship, or even existence, was not disclosed to the carrier. "Therefore," the court said, "her mental anguish and suffering could not have been reasonably in the contemplation of the express company as a probable consequence of a breach of the contract." In the Eddy Case it appeared that the plaintiff, Mrs. Nichols, resided in Monticello, Ark.; that her daughter died at Lone Oak, Tex., where she was attending school, boarding with one Vanlandingham; that Vanlandingham, after notifying Mrs. Nichols by telegraph of her daughter's death, left Lone Oak for Monticello, with the corpse, traveling over the appellee's line of railway. The carriage of the corpse was negligently delayed 24 hours, and it was in an advanced state of decomposition when it reached Monticello. It was held that the plaintiff was not entitled to recover, because her existence had not been "disclosed," quoting, "to appellee's agent, nor the relationship she bore to the deceased in any way made known to appellee."

If there is a material difference between the facts of the Fuller and Eddy Cases and this one, it lies in the fact that there were no circumstances in those cases and there were circumstances in this one which constituted notice to the defendant that the plaintiff probably would undergo mental suffering if the contract was breached.

Appellee insists there were such circum-

stances in this case, in that, as was shown by the testimony, appellee's son advised with appellants' agent as to the quickest and most direct route from El Paso to DeKalb, and at the time he purchased the ticket for the corpse purchased four other tickets entitling four persons to go on the train the corpse was to go on, by the same route, and to the same place the corpse was to go. Appellee urges that it therefore appeared that the agent reasonably must have known that four persons expected to accompany the corpse from El Paso to DeKalb, that in purchasing the tickets appellee's son was acting for at least three other persons than himself, and that each of those persons had an interest in the deceased which might be affected by the breach by appellants of their contract. Appellee further urges that appellants' agent, knowing that much. was bound, if he wished information as to who expected to use the tickets and their relationship to the deceased, to make such inquiry of his son as was necessary to place them in possession thereof. As supporting his view, appellee cites Tel. Co. v. Adams, 75 Tex. 531, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920, where Judge Henry, discussing the question of notice to a telegraph company, made the statement following, which Judge Brown, in Tel. Co. v. Carter, 85 Tex. 580, 22 S. W. 961, 34 Am. St. Rep. 826, declared to be "eminently just and correct":

"When the general nature of the communication is plainly disclosed by its terms, instead of requiring the sender to communicate to the unwilling ears of the busy operator the relationship of the parties concerned, a more reasonable rule will be, when the receiver of the dispatch desires information about such matters, for him to obtain it from the sender, and if he does not do so to charge his principal with the information that inquiries would have developed."

And appellee cites Tel. Co. v. Broesche, 72 Tex. 654, 10 S. W. 734, 13 Am. St. Rep. 843, as also supporting his view. In that case it appeared that the plaintiff Broesche resided near Burton. His wife died in Austin July 17th. Broesche and his family physician, Dr. Hons, went to the telegraph company's office in Austin, where, at 6 or 7 o'clock p. m. of the day specified above, Hons in his own name sent a message to Hoffman, his brother-in-law, at Burton as follows: "Mrs. Broesche is dead; will bring corpse on train to-night." Broesche paid the charges for transmitting the message. The corpse reached Burton about 1:30 a. m. July 18th, but the message was not delivered until about 8:30 a. m. July 18th. On the appeal the telegraph company complained of the charge of the court to the jury in that he failed to submit to them a question as to whether, if Hons acted for Broesche in sending the message, the company had notice he was so acting. In overruling the contention and affirming the judgment in Broesche's favor the court said:

"We are of opinion that it was immaterial whether appellant was notified that Hons was acting as agent for appellee or not. We cannot see how this could have affected the rights or influenced the conduct of appellant's agents. Appellee and Hons were together in the presence of the agent to whom the message was delivered at Austin. Appellee paid the charges for transmitting the message; the operator to whom the message was delivered testified he knew from the wording of the message that it demanded prompt delivery. Conceding that appellant was not informed that Hons was acting as agent for appellee, we are unable to understand how the lack of this information affected in any way the conduct of appellant's agents. It does not appear that they would have done more or acted differently under the contract."

The difference between the Broesche Case and this one, so far as the application of the principle in question is concerned, lies in the fact that the plaintiff in the Broesche Case paid the charges on the message and was with Hons when Hons sent same, while plaintiff here was not with his son when his son purchased the tickets and it does not appear in the record that he paid for same.

The conclusion we have reached is that the facts shown to have been known to appellants' agent were sufficient to put him upon inquiry as to the identity of the persons who were to use the four tickets for DeKalb purchased by appellee's son, and as to the relationship of such person to the deceased. There is no reason disclosed by anything in the record to doubt that inquiry of appellee's son would have resulted in full information to the agent about those matters. Therefore, we think, appellants were chargeable with notice of the fact that the corpse was that of appellee's deceased wife, and of the fact that one of the tickets was for use by him in accompanying the corpse to DeKalb, and hence should be held to have contemplated that he would undergo mental suffering if they breached their contract. It follows that we think appellants' contention to the contrary should be overruled.

[3] After the remittitur referred to in the statement above was filed and judgment was accordingly rendered in appellee's favor for $1,250, instead of $1,500, appellants insisted in the court below, and insist here, that the recovery allowed was still excessive. The jury and trial judge had the plaintiff and other witnesses before them, and therefore were in a more favorable position than we are in to determine, intelligently and justly, the amount which would compensate appellee for the suffering he endured. There is nothing in the record which suggests that they might have been influenced, in estimating the amount, by anything which should not have influenced them, and we have no reason to believe that our estimate, if it were for a less amount than that of the trial judge's, would be nearer right than his was.

The judgment is affirmed.