LANCASTER et al. v. MEBANE. (No. 2854.)*

(Court of Civil Appeals of Texas. Texarkana. March 7, 1924. Rehearing Denied March 20, 1924.)

1. Carriers ☞63—Facts held to establish special undertaking to transport corpse and relatives of deceased over particular route.

Undisputed facts relative to the purchase of a corpse ticket and tickets for relatives of deceased, which provided for transportation over a particular route, *held* to establish a special undertaking or contract on the part of the railroad to transport the relatives of the deceased and at the same time to forward the corpse with them on the same train to a particular destination in continuous passage over a particular route.

2. Carriers ☞116—Deviation from route contracted for in transporting corpse held to render carrier liable.

Unnecessary deviation or departure by a carrier from a route contracted for in transportation of corpse makes the carrier absolutely liable for legal damages.

3. Carriers ☞116 — Erroneous tagging of corpse held not to relieve carrier from liability for deviation from agreed route of transportation.

Where a railroad company, at the time of sale of a corpse ticket and tickets to relatives of deceased, which called for transportation over a particular route, knew that the corpse was to be transported over the same route on the same train, failure of the tag on the casket to contain a direction for transportation over that route *held* not to relieve the carrier from liability, where the erroneous tagging was done by fault of a baggage agent authorized to represent the carrier.

4. Contracts ☞171 (1)—Whether contract single and entire or apportionable in legal interests question of intent.

Whether a contract be single and entire or apportionable in legal interests is determinable by intention of the parties, and must be discovered in each case by consideration of the terms and subject-matter thereof.

5. Carriers ☞128 — Deviation in route in transportation of corpse held to entitle relatives accompanying same to sue individually for damages.

Where a railroad at the time of selling a corpse ticket and tickets to relatives of deceased understood that the corpse was to be transported on the same train and over the same route as called for by the tickets sold to the relatives of deceased, *held*, that its removal of the corpse from the train and transportation over different route was a violation of its contract for which each of the relatives could sue individually.

6. Contracts ☞171 (1)—Distinction between rights of action which are single and those which are several stated.

The true legal distinction between rights of action on contracts which are single and entire and those that are several and distinct is that the former arise out of one and the same contract, and the other out of different acts or agreements.

Appeal from District Court, Bowie County; Hugh Carney, Judge.

Action by Jamie Mebane against J. L. Lancaster and others, receivers. Judgment for plaintiff, and defendants appeal. Affirmed.

See, also, 247 S. W. 926; 260 S. W. 256; 260 S. W. 259.

The appellee sued to recover damages for mental anguish suffered through an alleged unnecessary and wrongful act of appellants in violation of an express undertaking to transport him and to forward at the same time the dead body of his mother for burial, in continuous passage on the same train, by the same route, from El Paso to De Kalb, Tex. The appellants issued a "corpse ticket" entitling the dead body of appellee's mother to be forwarded from El Paso to De Kalb via Texarkana, and issued to appellee a ticket entitling him to proceed in continuous transportation by the same train and route that the corpse was forwarded. The corpse was removed from the train by appellants' agent at Fort Worth, and there was deviation from the original route, depriving appellee of continuous passage with the corpse and delaying the arrival of the corpse at De Kalb. Besides a demurrer and special exceptions to the petition, the appellants filed a general denial. The jury returned a verdict in favor of the appellee for damages in the sum of $1,100.

The evidence shows that the mother of appellee had gone to El Paso for the benefit of her health, and later died there on April 25, 1921. Her home was in De Kalb, Tex., where she and her family had lived for a number of years. At the time of her death, which was not unexpected, there were present her husband, her son (the appellee), and three daughters. The family present all decided and agreed to bury the deceased at De Kalb, Tex., on April 27 at 10 o'clock a. m., and to have the funeral arrangements made accordingly. They agreed among themselves to transport the dead body direct to De Kalb, and for each one of them to go with it over the Texas & Pacific Railway in continuous passage by way of Texarkana on the Sunshine Special train. The line of the Texas & Pacific Railway runs from El Paso to Texarkana, with a branch line running from Fort Worth via Whitesboro and De Kalb to Texarkana. At the time in question there was operated over the Texas & Pacific Railway directly from El Paso to Texarkana a fast through passenger train, known as the Sunshine Special, leaving El Paso at 4:15 o'clock p. m. and arriving at Texarkana the next day at 10:45 p. m. A passenger train also regularly left Texarkana for Fort Worth over the

branch line daily at 8 o'clock a. m., arriving at De Kalb, 34 miles distant, at 9:45 a. m. A passenger train also regularly left Fort Worth for Texarkana over the branch line daily at 7:25 a. m., arriving at De Kalb at 4:50 p. m. The schedule time from El Paso to De Kalb via Texarkana, on the Sunshine Special out of El Paso, is seven hours earlier than the schedule time of the passenger train via Fort Worth and Whitesboro. The schedule of the trains was known to the family of the deceased at the time they agreed upon the time of the burial and upon the route of travel to De Kalb. After the arrangements were made for the funeral the appellee wired Mrs. Crew at De Kalb that the corpse and the family would be there on the morning train of the 27th, at 9:45 o'clock, and asked her to arrange the funeral services for 10 o'clock. The appellee then went to the city ticket office to purchase of appellants' agent tickets for his two sisters, his father, himself and the corpse. The agent was informed at the time by the appellee that he, his sisters, and his father wanted to leave on the Sunshine Special and wanted the corpse to be forwarded with themselves in continuous passage from El Paso to De Kalb, Tex., via Texarkana, on the Sunshine Special train; that they wanted that special routing in order to reach De Kalb, Tex., in the daytime earlier than could be done over the branch line out of Fort Worth. The agent then issued and delivered to appellee the five tickets, marking each one, "From El Paso to De Kalb, Texas, via Texarkana." On the ticket issued for the dead body was marked across the face and on the back, "Corpse Ticket," and on the back appears the date "April 25, 1921." The ticket agent at the same time issued and delivered to the appellee a receipt for the five tickets, stating the serial number of each ticket, the amount of money paid for each ticket, and that each ticket was from "El Paso, Texas, to De Kalb, Texas, via Texarkana." After the appellee purchased the tickets, he handed the "corpse ticket" to the undertaker to have the corpse "checked" under the railway regulations. The undertaker brought back a duplicate "check" issued by the baggage agent, and handed it and the "corpse ticket" to appellee. As proven:

"The checking is done at El Paso by the Terminal baggage agent at the Terminal station there, under the control of the Terminal Company. The Terminal handles checking, and checking of corpses; they represent the T. & P. Railroad, so far as checking is concerned, as well as all other roads."

The corpse was placed in the baggage car of the Sunshine Special train, a train over appellant's line, at 3:30 p. m. of April 25, 1921, and the appellee and the other members of the family also boarded the same train. This train left El Paso at 4:15 p. m. for a continuous trip to Texarkana. The appellants received the appellee and the other members of the family and the corpse on that train for transportation under the terms of the tickets issued. It appears that the corpse was taken from the Sunshine Special train at Fort Worth by the employees of appellant. The following explanations appear: The station master at Fort Worth testified:

"I remember about the corpse of Mrs. Mebane being taken off of the train at Fort Worth in April, 1921, off of the Sunshine Special. I personally supervised the taking of this corpse from the train at Fort Worth. Under the method of doing business, when I found baggage or a corpse shipped from El Paso, say to De Kalb, and there was nothing on the check to show that it was to go by Texarkana, the usual route for it to be carried would be over the transcontinental division. I think it is from three to five miles shorter route via the transcontinental division to De Kalb than it is over the main line. It was the custom of the Texas & Pacific to transfer baggage that came in El Paso to the transcontinental division to carry it by Whitesboro and on. That is why I took this corpse off at Fort Worth. I tried to find an attendant with the corpse at Fort Worth. I had the gateman to watch out, and I made inquiry of one or two passengers. I did not find or see any attendant. I then placed the corpse in the baggage room and kept it there until it went out at 7:25 a. m. the next day on the transcontinental division. I first discovered that this corpse should have gone via Texarkana the next morning at the time we got it out on No. 32 at 7:25 a. m. There is supposed to be an escort with every corpse; that is a rule and regulation."

Appellee testified:

"We arrived at Fort Worth about 3 or 3:30 o'clock p. m., and remained about 15 or 20 minutes. * * * The train was detoured from Big Sandy, over the Cotton Belt Railway, via Mt. Pleasant, to Texarkana on account of a washout ahead near Marshall. I first discovered that the corpse of my mother was not on that train at Mt. Pleasant. I then inquired why the corpse of my mother was not on the train, but I got no information as to where she was or what they had done with her. If the corpse had been on the same train I was, it would have gotten to Texarkana when I did in time to catch the transcontinental division train for De Kalb, due at De Kalb at 9:30 a. m. The corpse did not get into De Kalb until about 5 p. m. It was late in the evening when my mother was buried. There was a delay of funeral arrangements and the burial of my mother by reason of the delay of the corpse getting there. After the corpse got there we carried it to the church, but the services were cut short on account of the time of day, and we carried the remains to the graveyard. * * * There was a large attendance of people at the funeral. * * * I could hardly tell just what effect the delay of arrival of the body, the taking of my mother off of the train at Fort Worth, and the delay of the funeral had on my mind, but it was pretty hard."

It was shown that the box containing the casket and corpse had the "check" or tag reading:

"Texas & Pacific R. R. April 25, 1921. From El Paso U. D. to De Kalb. Corpse ticket, No. 15584."

Ticket No. 15584 was the serial number of the "corpse ticket" issued by the ticket agent and delivered to appellee Jamie Mebane.

King, Mahaffey & Wheeler, of Texarkana, for appellants.

Sid Crumpton, of Texarkana, and O. B. Pirkey, of New Boston, for appellee.

LEVY, J. (after stating the facts as above). The court charged the jury as follows:

"This cause will be submitted to you upon one fact alone, as follows: What amount of money will fairly and reasonably compensate the plaintiff as damages for the mental anguish suffered by him by reason of the negligent delay in the shipment of his mother's remains from El Paso to De Kalb? Answer in dollars and cents. [Here follows definition of mental anguish.]"

The appellants complain of submitting to the jury the question of damages only. They predicate error upon the ground that negligence vel non, as alleged in the petition, was, under the evidence offered, an issue of fact for determination by the jury, rather than a question of law to be decided by the court, as done. The petition substantially alleges: (1) That on April 25, 1921, appellee, his sisters, and father agreed and made arrangements to bury deceased at their home in De Kalb, Tex., at 10 o'clock a. m. of April 27, 1921; (2) that after having so arranged to bury the deceased the appellee, together with his father, purchased from the appellants' agent at El Paso a "corpse ticket" for the transportation of the dead body over appellants' line of railway to De Kalb, and at the same time the appellee purchased a ticket for himself over the same line to De Kalb; (3) that after purchasing said tickets, at 3:30 p. m. of April 25, 1921, the corpse of appellee's mother was placed aboard the Sunshine Special train of appellants to be forwarded to De Kalb, and that appellee also boarded that train for De Kalb; (4) that when the Sunshine Special train reached Texarkana at 11 p. m. of April 26 the corpse was not on that train; but (5) that the corpse was "removed from the train at Fort Worth, through the negligence of the defendants' agents and servants, and was left there in the baggage room from 3 p. m. of April 26 until 8 a. m. of April 27, when it was placed aboard one of the defendants' trains on the transcontinental division, which arrived in De Kalb on April 27 at 5 p. m."; and (6) that appellee did not know of the wrongful removal of the corpse from the Sunshine Special train until that train reached Texarkana, and even afterwards "for four or five hours was unable to ascertain the whereabouts of the body," "to his great mortification and distress of mind." In intention the petition sounds in contract of special routing of the appellee and the corpse over the line of railway from El Paso to De Kalb in continuous passage on the Sunshine Special train. For the effect of the averments is that of an undertaking on the appellants' part to transport the appellee in continuous travel with the corpse over the same line or special route from El Paso to De Kalb by which the corpse was to be forwarded. And the fact is averred that appellants in accordance with the agreement, accepted both the appellee and, the corpse on the Sunshine Special train for continuous passage through from El Paso to De Kalb. Such averments are consistent, and not necessarily inconsistent with proof of an agreement of transportation from El Paso to De Kalb via Texarkana.

In keeping with these averments evidence was offered, without objection, showing that appellee, his sisters, and father agreed among themselves to bury the deceased in the cemetery at their home town in De Kalb, and to forward the corpse on the same train with them. They desired to take, and to have the corpse forwarded on, the particular Sunshine Special train of appellants out of El Paso via Texarkana, in order to reach De Kalb about seven hours earlier in the daytime than could be done on the train by way of Fort Worth and Whitesboro over the branch line. The evidence is undisputed that appellants' ticket agent at El Paso was expressly informed and knew that the appellee and the other members of the family wanted to take and to have the corpse forwarded with them on only that particular train over the particular route via Texarkana. The ticket agent, with this knowledge, then issued and delivered the tickets for transportation from El Paso to De Kalb via Texarkana route. The corpse was then placed on the Sunshine Special, and the appellee and the other members of the family also boarded the same train, bound, under the tickets, from El Paso directly through to Texarkana.

[1, 2] The legal effect attaching to these undisputed facts is that of a special undertaking or contract on the part of the appellants to transport appellee and the other members of the family, and at the same time to forward the corpse with them, on the same train to the particular destination of De Kalb in continuous passage over the particular route via Texarkana. They were accepted by appellants under the tickets on that particular train for that purpose. When the Sunshine Special train reached Fort Worth, en route through to Texarkana, the corpse was, as admittedly shown, removed by appellants' agents from the train and held in the bag-

gage room there until next day at 8 a. m., when it was sent forward by appellants' agents to De Kalb on the regular train over their transcontinental division line of railway. It is settled as a matter of authority that an unnecessary deviation or departure by a carrier from the route contracted makes such carrier absolutely liable for legal damages. 1 Elliott on Railroads, § 1440.

[3] The fact that the tag on the casket did not read "via Texarkana" would not operate to relieve appellants of absolute liability for damages for removing the corpse from the train at Fort Worth. For the appellants had notice not only of the sale of the corpse ticket and appellee's ticket and of the routing, but that the corpse and the appellee had been accepted on that train under the tickets reading "via Texarkana." And the erroneous tagging or "checking" of the casket was done by fault of a baggage agent, authorized, as shown, to "represent the T. & P. Railroad." Having undertaken, as appellants did, to transport appellee and the corpse together in continuous passage on the same train, via Texarkana, they did so with a knowledge of the fact that a failure on their part to comply with the terms of such contract of routing would result in injury to the feelings of the appellee, and they must therefore be held to have contracted with reference to damages of that character in the event of a breach of the contract on their part. Lancaster v. Mebane (Tex. Civ. App.) 247 S. W. 926; Railway Co. v. French, 23 Tex. Civ. App. 511, 57 S. W. 56; Hale v. Bonner, 82 Tex. 33, 17 S. W. 605, 14 L. R. A. 336, 27 Am. St. Rep. 850. It is believed that error cannot be predicated upon the action of the court, in view of the evidence in the case.

[4-6] The appellants insist that the alleged contract of transportation of the corpse is either a joint contract made with the appellee and his father, J. A. Mebane, or a contract made with J. A. Mebane alone, through appellee acting as his agent, and hence the appellee alone would be unauthorized to recover upon the joint contract without making J. A. Mebane a party to the suit, and also he would be precluded from recovering in the capacity of agent for his father, since the father has already recovered on the contract. As to whether a contract be single and entire, or apportionable in legal interests, like most other questions of construction, rests upon the intention of the parties and must be discovered in each case by considering the terms and subject-matter of the contract. In following this rule, it appears that appellants through their agents issued and delivered to the appellee and each member of the family a separate and distinct ticket for travel over the particular route from El Paso to De Kalb via Texarkana, for the especial purpose of enabling each one of them to accompany and journey in continuous passage with the corpse of the deceased, forwarded over the same route. The sale of each ticket to each one of the persons, with knowledge of the agent that each person was to accompany the corpse on the same train and route with it, intimately, yet separately, connects the sale of each ticket with the contract of forwarding the corpse. For the sale of the "corpse ticket" for passage over a special route was not the only subject-matter of agreement, single and entire. There was also involved the contractual right of the appellee and each member of the family, arising out of the sale of each ticket separately, to proceed upon the same train in continuous passage with the corpse over the special route upon which the corpse was to be forwarded. Each member of the immediate family had his peculiar and exclusive interests, invaluable in the right, in accompanying the corpse in the forwarding to its repose in consecrated ground. And a separation of any one of the members of the family from the right to accompany the corpse on the journey, by removing the corpse from the train, would be a distinctive violation of his contract evidenced by his ticket. Therefore it is concluded that the issuance and delivery by appellants' agent of tickets to each member of the family over the same route as the corpse ticket operated, in the circumstances, to be a special agreement with each member of the family to have the corpse go by that special route in continuous passage on the same train with them. The damages of injured feelings are clearly separate and a subject-matter of apportionment in legal interests. The true legal distinction between rights of action which are single and entire, and those which are several and distinct, is that the former immediately arise out of one and the same contract, and the latter out of different acts or agreements, as here.

We have considered the other assignments of error, and think they should be overruled.

The judgment is affirmed.